UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **REBECCA PRICE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 7:24-cv-00666-AMM** |
| ) | |
| **SOUTHERN ALE HOUSE, LLC,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION ON DEFENDANT PI KAPPA PHI FRATERNITY'S MOTION TO DISMISS

This matter comes before the court on a motion to dismiss filed by defendant Pi Kappa Phi Fraternity. Doc. 19. For the reasons explained below, this motion is **GRANTED**.

### I.   BACKGROUND

This dispute arises from incidents that took place at the Pi Kappa Phi fraternity house in Tuscaloosa, Alabama. The alleged facts viewed in the light most favorable to plaintiff Rebecca Price are as follows:

Ms. Price was employed by Southern Ale House, Pi Kappa Phi Omicron Chapter ("Omicron Chapter"), the Omicron Club, and Pi Kappa Phi Fraternity ("Pi Kappa Phi") as a food preparer and server from August 2021 to August 2023. Doc. 1 ¶¶ 15, 23 The "Omicron Club owns the fraternity house and furniture and

equipment, which it leases to the Omicron Chapter." *Id*. ¶ 25. Members of the Omicron Club are Pi Kappa Phi alumni, and fraternity activities take place within the house leased by the Omicron Chapter. *See id*. ¶¶ 25–26, 29.

The Omicron Chapter contracted with Southern Ale House for food services. *Id*. ¶ 26. Southern Ale House assigned Ms. Price and Jeff Wilson, a chef and manager at Southern Ale House, to work at the Pi Kappa Phi fraternity house. *Id*. ¶¶ 28–29, 33. During Ms. Price's tenure there, she "was sexually harassed and subjected to a hostile work environment." *Id*. ¶ 29. The Omicron Chapter's "members and their guests frequently and consistently behaved in a manner that was offensive and threatening." *Id*. ¶ 30. Ms. Price "was afraid that she might be harmed." *Id*. ¶ 31. "Omicron Chapter members would come through the buffet line for each meal and grab their crotches while they were waiting." *Id*. ¶ 35. Some members destroyed furniture, while other members openly drank alcohol during dinner despite being under the legal drinking age. *Id*. ¶¶ 55–56. There were other instances of violence, drug use, and screaming that left Ms. Price feeling offended, intimidated, and threatened. *Id*. ¶¶ 45, 62, 66, 73, 39.

Ms. Price expressed her concerns to Mr. Wilson, and both complained to Justin Holt, the owner of Southern Ale House and a member of the Omicron Club.

2

*Id.* ¶ 33. Mr. Holt "failed to take any action to correct the behavior of the Omicron Chapter members or to prevent future harassment." *Id*. Ms. Price and Mr. Wilson also complained to Laura Armistead, the Omicron Chapter House Mother, but she too "failed to take any action." *Id.* ¶ 34. Repeated complaints fell on deaf ears. *See id.* ¶¶ 76, 83.

Ms. Price was never criticized or disciplined by Mr. Holt for her "job performance" or "any misconduct" and was told that she "would continue to work at the fraternity house." *Id.* ¶¶ 89–90, 92. But on August 10, 2023, Ms. Price learned that Mr. Holt informed Mr. Wilson that "[Ms. Price] was no longer welcome to work at the Omicron Chapter." *Id.* ¶ 93.

On November 10, 2023, Ms. Price filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that Pi Kappa Phi engaged in sex discrimination and retaliation by terminating her for objecting to inappropriate workplace conduct. Doc. 1-4 at 4. The EEOC dismissed Ms. Price's charge and issued a right to sue letter on May 16, 2024. Doc. 1-5 at 1. Ms. Price then filed this lawsuit asserting claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. Doc. 1.

Pi Kappa Phi filed this motion to dismiss, arguing that it is not an employer

3

subject to Title VII. Doc. 19 at 4. Ms. Price filed a response. Doc. 23. Pi Kappa Phi filed a reply. Doc. 28.

## II. LEGAL STANDARD

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. ANALYSIS

Title VII provides that it is unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The term 'employer' [is defined as] a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). But this definition has exceptions. "[A] bona fide private membership club . . . which is exempt from taxation under section 501(c)" of the Internal Revenue Code is one such exception. *Id*.

### A. Private Membership Club

Pi Kappa Phi asserts that it is "a bona fide private membership club . . . which is exempt from taxation under 501(c)." Doc. 19 at 6. Pi Kappa Phi asserts that "[i]t is undisputed that the [f]raternity is a private membership club." *Id*. Additionally, Pi Kappa Phi asserts that "the [f]raternity is a federal tax-exempt, non-profit entity pursuant to Section 501(c)." *Id*.; Doc. 19-1 at 1; Doc. 28-1 at 2. Consequently, Pi Kappa Phi asserts that it is subject to the private membership club exception of Title VII and is not an employer. Doc. 19 at 7.

Ms. Price responds that Pi Kappa Phi failed to establish that it is a "bona fide private membership club" within the meaning of Title VII. Doc. 23 at 2.

The Eleventh Circuit has explained that the private membership club

5

exception applies to organizations that use "'self-government and member-ownership,' . . . and pursue [] a 'plan or purpose of exclusiveness,' . . . by acting to ensure 'seclusion from others in critical aspects of the relationship[s]' between members at [their] facilities." *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1158 (11th Cir. 2021) (cleaned up). "[A]n organization is not a private club if it allows outsiders easy access to its facilities through loose membership criteria or guest policies." *Id*. at 1157. "[W]hether or not an institution is a 'club' within the meaning of the private-club exception is a question of law once the underlying facts have been determined." *Id*. at 1158 (cleaned up).

Although Pi Kappa Phi states that its status as a private membership club is "undisputed," Doc. 19 at 6, Ms. Price disputes that status, Doc. 23 at 2. Ultimately, evidence will establish whether Pi Kappa Phi uses "'self-government and member-ownership,' . . . and pursues a 'plan or purpose of exclusiveness,' . . . by acting to ensure 'seclusion from others in critical aspects of the relationship[s]' between members at its facilities." *Ring*, 4 F.4th at 1158. Until that evidence is developed, the court cannot determine whether Pi Kappa Phi is a private membership club under Title VII. Pi Kappa Phi's tax-exempt status is insufficient to trigger the private membership club exception to Title VII. *See* 42 U.S.C. § 2000e(b).

### B. Employer Liability

The court next turns to Pi Kappa Phi's argument that it was not Ms. Price's employer under Title VII. "A Title VII workplace discrimination claim can only be brought by an employee against his employer." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016). "Among the basic factors" the court considers when determining whether an employment relationship existed are "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id*. Controlling precedent recognizes that employers may be treated as "joint employers" when "two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999).

Ms. Price makes a conclusory allegation that Pi Kappa Phi is her employer. Doc. 1 ¶ 19. But she alleges no facts that would support such a direct employment relationship. Alternatively, Ms. Price argues that Pi Kappa Phi and the other defendants are joint employers. *Id*. ¶ 20. But there are no allegations, conclusory or otherwise, about a contractual relationship between Pi Kappa Phi and the co-

7

defendants that relates to Ms. Price's employment. The only contractual relationship that Ms. Price alleges is one between the Omicron Chapter and Southern Ale House. *Id.* ¶ 26. Consequently, whether Pi Kappa Phi is Ms. Price's employer depends on "how much control [Pi Kappa Phi] exerted on [Ms. Price]" and "whether [Pi Kappa Phi] had the power to hire, fire, or modify the terms and conditions of [Ms. Price's] employment." *Peppers*, 835 F.3d at 1297.

In *Peppers*, the plaintiff was employed by the district attorney's office and paid by the county. *Id.* at 1293. The plaintiff sued the county, alleging that the county's method of compensation violated Title VII. *Id.* The plaintiff alleged that the county was his joint employer because although he worked in the district attorney's office, the county approved the district attorney's budget and paid the plaintiff's salary and benefits. *Id.* at 1292–93, 1297. The Eleventh Circuit held that the county was not the plaintiff's joint employer, reasoning that the core employment functions of recruiting, hiring, creating a job title, establishing job responsibilities, regulating the work environment, and supervising, were performed by the district attorney's office. *Id.* at 1300. Because the district attorney's office "alone filled nearly all of the roles traditionally filled by an employer," it was obvious that the district attorney's office, not the county, was the employer. *Id.*

8

To determine whether Pi Kappa Phi was Ms. Price's joint employer, this court turns to the factual allegations in the complaint. Ms. Price states that she was employed by Pi Kappa Phi and that Pi Kappa Phi "had authority and control over the workspace in which the illegal harassment [sic] occurred and participated in the employment decisions at issue in this lawsuit." Doc. 1 ¶ 19.

Pi Kappa Phi argues that Ms. Price "has made no factual allegations in the complaint showing how the [f]raternity exercised any control over fundamental aspects of [Ms. Price's] employment." Doc. 19 at 5 (cleaned up). Pi Kappa Phi argues that there are no allegations that the fraternity was involved in supervising Ms. Price, delegating responsibilities to her, compensating her in exchange for services provided, or ever communicating with her. *Id.* at 6. Pi Kappa Phi argues that in the absence of such factual allegations, Ms. Price's claims against it are not plausible. *Id.*

Ms. Price responds that the alleged "facts and the reasonable inferences that can be drawn from them show that the decision to terminate [Ms.] Price was made or influenced by someone other than Southern Ale House." Doc. 23 at 2. Additionally, Ms. Price asserts that "discovery directed to the allegations [Ms.] Price has made . . . will determine" whether an employment relationship existed between

her and Pi Kappa Phi. *Id*. at 3.

This court finds that Ms. Price's factual allegations are insufficient to plead a plausible employment relationship between Pi Kappa Phi and Ms. Price. The complaint does not contain factual allegations about how Pi Kappa Phi participated in Ms. Price's employment decisions. It does not assert that Pi Kappa Phi recruited, hired, or supervised Ms. Price. It does not assert that Pi Kappa Phi disciplined Ms. Price or compensated her. It does not assert that Pi Kappa Phi had the power to fire Ms. Price or modify the terms of her employment. At most, it asserts that Pi Kappa Phi regulated Ms. Price's work environment. *See* Doc. 1 ¶ 19. But this alone is insufficient to plead a plausible employment relationship, which requires asserting a combination of factors. *See Peppers*, 835 F.3d at 1300.

Ms. Price's allegation that "[Mr.] Holt never criticized [Ms. Price] or her job performance" and "never disciplined [Ms. Price] for any misconduct" is also insufficient to plead a plausible employment relationship. Doc. 1 ¶¶ 89–90. Ms. Price argues that because Mr. Holt never criticized or disciplined her, the decision to fire her must have been made by some entity other than Southern Ale House. Doc. 23 at 2. But the court cannot construe an employment relationship between Pi Kappa Phi and Ms. Price from Mr. Holt's silence.

Finally, the statement that Mr. Holt informed Mr. Wilson that Ms. Price "was no longer welcome to work at the Omicron Chapter" does not plead an employment relationship between Pi Kappa Phi and Ms. Price. Doc. 1 ¶ 93. Taken as true, that allegation supports an inference that Southern Ale House, not Pi Kappa Phi, was Ms. Price's employer.

Ms. Price's allegations that Pi Kappa Phi was her employer fail to state a plausible claim for relief. *See Ashcroft*, 556 U.S. at 678.

### IV. CONCLUSION

For the reasons explained above, Pi Kappa Phi's motion to dismiss, Doc. 19, is **GRANTED** and Ms. Price's claims against it are **DISMISSED**.

**DONE** and **ORDERED** this 27th day of December, 2024.



_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE